

**SIGNED this 4 day of April, 2012.**

                              **James P. Smith**
                        **United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| TERRY ROBERT FREEMAN, | : | |
| | : | |
|     Debtor | : | Case No. 10-32105 JPS |
| | : | |
| MOUNTAIN VALLEY COMMUNITY BANK, | : | |
| | : | |
|     Plaintiff | : | Adversary Proceeding |
| | : | No. 11-3019 |
|     vs. | : | |
| TERRY ROBERT FREEMAN, | : | |
|     Defendant | : | |

BEFORE
James P. Smith
United States Bankruptcy Judge

APPEARANCE:

| | |
|---|---|
| For Plaintiff: | Thomas E. Austin, Jr.<br>3490 Piedmont Road, N.E.<br>Suite 1005<br>Atlanta, Georgia 30305 |
| For Defendant/Debtor: | Robert J. Kiser<br>Kiser Law, P.C.<br>3915 Harrison Road, Suite 500<br>Loganville, Georgia 30052 |

## **MEMORANDUM OPINION**

Before the Court is Plaintiff's motion for summary judgment in which Plaintiff seeks a determination that a certain obligation is nondischargeable under 11 U.S.C. § 523(a)(2)(B). The Court, having considered the record and the applicable law, now publishes this memorandum opinion.

"A motion for summary judgment should be granted when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). . . *Celotex Corp. v. Catrett*, 477 U.S. 371, 322, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986); *see also Morisky v. Broward County*, 80 F.3d 445, 447 (11th Cir. 1996). On a summary judgment motion, the record and all reasonable inferences that can be drawn from it must be viewed in the light most favorable to the non-moving party. *See Cast Steel*, 347 F.3d at 1301." *Midrash Sephardi, Inc., v. Town of Surfside*, 366 F.3d 1214, 1223 (11th Cir. 2004), *cert. denied* 543 U.S. 1146, 125 S.Ct. 1295, 161 L.Ed.2d 106 (2005).

Although Rule 56 was completely rewritten in 2010, no change was made to the summary judgment standard itself or to the burdens imposed on movants and opponents. Wright, Miller & Kane, 10A *Federal Practice and Procedure*, Text of Rule 56, n.6 (Supp. 2011).

## BACKGROUND

On December 8, 2006, Debtor Terry Robert Freeman ("Debtor") and two co-borrowers executed and delivered to Plaintiff Mountain Valley Community Bank ("Bank") a note in the original principal amount of $700,000. Certain real estate located in Cleveland, Georgia, was pledged as security for the note. At the Bank's request, and prior to the execution of the note, Debtor gave the Bank a financial statement that showed that Debtor owned, free and clear of any mortgage, real estate in Snellville, Georgia (the "Property") worth $700,000. The value of the Property accounted for almost one-half of the net worth of $1,487,000 shown on Debtor's financial statement. In his affidavit, Debtor testified that he told a loan officer of the Bank that he did not own any real estate but that the Property was owned by Debtor's father.[1] He further testified that the loan officer said that the Bank had plenty of other security for the loan, and to go ahead and list his father's Property on Debtor's financial statement.

Debtor and his co-borrowers renewed the note in November 2007, and November 2008, and executed a loan modification agreement in March 2010. In connection therewith, Debtor gave the Bank his financial statements dated November 23, 2007, and October 22, 2008[2], again showing that Debtor owned the Property free and clear of any mortgage.

Debtor filed this Chapter 7 case on November 16, 2010. The Bank then filed a complaint contending that Debtor's obligation under the note is nondischargeable.

---

[1] The Property may have been owned by both of Debtor's parents.

[2] Debtor's financial statement dated October 22, 2008, shows that his financial condition had deteriorated, that the Property was then worth $600,000 and that his net worth was $839,000.

In its motion for summary judgment, Bank seeks a determination that Debtor's obligation is nondischargeable under 11 U.S.C. § 523(a)(2)(B)(iv) which provides:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
> . . .
>> (B) use of a statement in writing—
>>   (i) that is materially false:
>>   (ii) respecting the debtor's or an insider's financial condition;
>>   (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>   (iv) that the debtor caused to be made or published with intent to deceive;

The Bank has the burden of proof to establish all of the elements of its claim of nondischargeability. *Agribank, FCB v. Gordon* (*In re Gordon*), 277 B.R. 805, 809 (Bankr. M.D. Ga. 2001).

To prevail, the Bank must first show that Debtor published a written statement that was materially false. "A statement is materially false for purposes of section 523(a)(2)(B) if it paints a substantially untruthful picture of financial conditions by misrepresenting information of the type that would normally affect the decision to grant credit." 4 *Collier on Bankruptcy* ¶ 523.08[2] [b]. "A falsehood is material if it is significant in both amount and effect on the creditor receiving the financial statement. The information must have actual usefulness to the creditor and must have been an influence on the extension of credit." *Citizens Bank of Washington County v. Wright* (*In re Wright*), 299 B.R. 648, 659 (Bankr. M.D. Ga. 2003) (Walker, J.) (internal quotations and citations omitted)

Debtor's financial statements showed that he owed, free and clear, Property worth $600,000 to $700,000, which accounted for one-half or more of his stated net worth. Thus, the size of this representation would be material if it influenced the Bank's decision to make the loan.

The Bank must also show that it reasonably relied upon Debtor's financial statements. This is a two-part analysis. First, Section 523(a)(2)(B)(iii) requires that the creditor actually rely on the debtor's statement. "Accordingly, if it were reasonable to rely on a debtor's statement, but the creditor did not in fact rely upon the false statement, (B)(iii) would not be satisfied." *Ins. Co. of North America v. Cohn* (*In re Cohn*), 54 F.3d 1108, 1115 (3rd Cir. 1995). *See also*, *First Commercial Bank v. Robinson* (*In re Robinson*), 192 B.R. 569, 576 (Bankr. N. D. Ala. 1996); *First American Bank of Indian River County v. Schraw* (*In re Shraw*), 136 B.R. 301, 304 (Bankr. S.D. Fla. 1992).

Debtor testified that the Bank, through its loan officer, knew that he did not own the Property. He testified that the loan officer told him:

> . . . that the real property securing the loan, as well as the assets of the co-borrowers, was plenty of security for the bank, and just for the sake of completing the statement to go ahead and list his father's real estate.

Affidavit of Debtor, para. 4. He further testified that:

> Everyone that I spoke with, including [the loan officer] as a representative of the bank as well as the [sic] both co-borrowers, told me that a personal financial statement was simply a formality and not to worry about it. This was repeated each time I was required to provide a new personal financial statement.

Affidavit of Debtor, para. 6. On the other hand, the Bank's president, Donald Allison, testified in his affidavit that Debtor's personal assets were a factor in the Bank's decision to

6

approved the loan.  Accordingly, the evidence is in conflict and there is a genuine issue as to the material fact of whether the Bank actually relied on the financial statement.

The Bank must also show that its reliance was reasonable.  In *Wright*, Judge Walker stated:

> The reasonable reliance analysis is done on a case-by-case basis considering the totality of the circumstances.  Within this analysis, the Court should not second guess the creditor's decision to extend credit, but neither should it allow the creditor to ignore readily available facts.  The totality of the circumstances may include, without limitation, the following factors; (1) whether the creditor followed its established lending procedure in [making the loan]; (2) whether the creditor verified the financial statements through outside sources; (3) whether the creditor had a previous relationship with the debtor; and (4) whether the financial statements contained any "red flags" that would have alerted the creditor to potential inaccuracies.

299 B.R. at 659.  "Reasonable reliance connotes the use of the standard of the ordinary and average person"  *City Bank & Trust Co. v. Vann* (*In re Vann*), 67 F.3d 277, 280 (11th Cir. 1995).

In his affidavit, the Bank's president testified that, following the Bank's practice, it did not perform a title search on the Property because it was not pledged as collateral for the note and because there were two other borrowers on the note.  However, if, as Debtor testified, the Bank's loan officer knew that he did not own the Property, that would have constituted a "red flag" that should have alerted the Bank to the inaccuracy of the financial statement.  This places the issue of "reasonable reliance" in dispute.

The Bank must also show that Debtor intended to deceive the Bank with the financial statement.  Section 523(a)(2)(B)(iv).  Debtor's testimony that he told the Bank's loan officer that he did not own the Property, but included it on his financial statement in compliance

with the loan officer's instructions, raises a genuine issue of material fact with respect to Debtor's intent.

In summary, the Court finds that there are genuine issues of material fact remaining with respect to the issues of the Bank's reliance, it's reasonable reliance and Debtor's intent to deceive. Accordingly, Bank's motion for summary judgment is denied.

An order in accordance with this memorandum opinion shall be entered this day.

* END OF DOCUMENT *