

**SIGNED this 21 day of December, 2012.**

_James P. Smith_
**James P. Smith
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| In the Matter of: | : | Chapter 7 |
| | : | |
| TERRY ROBERT FREEMAN, | : | |
| | : | |
| Debtor | : | Case No. 10-32105 JPS |
| | : | |
| MOUNTAIN VALLEY COMMUNITY BANK, | : | |
| | : | |
| Plaintiff | : | Adversary Proceeding |
| | : | No. 11-3019 |
| vs. | : | |
| | : | |
| TERRY ROBERT FREEMAN, | : | |
| Defendant | : | |

BEFORE
James P. Smith
United States Bankruptcy Judge

APPEARANCE:

    For Plaintiff:             Thomas E. Austin, Jr.
                                  3490 Piedmont Road, N.E.
                                  Suite 1005
                                  Atlanta, Georgia 30305

    For Defendant/Debtor:     Robert J. Kiser
                                  Kiser Law, P.C.
                                  3915 Harrison Road, Suite 500
                                  Loganville, Georgia 30052

## MEMORANDUM OPINION

Before the Court is Plaintiff's objection to dischargeability of a claim against Debtor. This matter came on for trial on September 20, 2012. The Court, having considered the testimony and other evidence presented, the stipulation of facts, the post-trial briefs, and the applicable law, now publishes this memorandum opinion.

## FACTS

Debtor Terry Robert Freeman, James Bailey and Kenneth Folsom signed a note dated December 8, 2006, in favor of Plaintiff Mountain Valley Community Bank ("Bank"). The principal amount of the note was $700,000. The note was secured by real property owned by Debtor, Bailey and Folsom, which was located in White County, Georgia. The note was renewed in November 2007 and November 2008[1] and modified in March 2010.[2]

In connection with the loan transactions, Debtor gave the Bank his personal financial statements dated July 12, 2006, November 23, 2007 and October 22, 2008. The financial statements showed that Debtor owned, free and clear of any mortgage, real property in Snellville, Georgia, with a value of $600,000 to $700,000. However, although Debtor has resided on the Snellville property since 1998, he has never owned it. The property has at all relevant times been owned by Debtor's father.

Debtor filed this Chapter 7 case on November 16, 2010. On February 15, 2011, the Bank filed this adversary proceeding seeking a determination that Debtor's obligation under the loan is nondischargeable under 11 U.S.C. § 523(a)(2)(B). The Bank's objection to dischargeability arises out of Debtor falsely claiming on his financial statements that he owned the Snellville property. At trial, Debtor testified that the Bank's loan officer knew that he did not own the Snellville property

---

[1] The principal amount of the November 2008 renewal note was $700,450.

[2] The terms of the modification are not material to the issue presented in this case.

but told him to put the property on his financial statement anyway. The Bank denied this assertion.

The Court entered an order on February 17, 2011, granting Debtor a discharge in bankruptcy.[3] On June 9, 2011, the Court granted the Bank relief from the automatic stay, 11 U.S.C. § 362, as to the White County property and ordered that the Bank "shall be entitled to proceed with all legal remedies against the Real Property."

Prior to Debtor filing his Chapter 7 case, the Bank had filed a lawsuit against Debtor, Bailey, Folsom and others in the State Court of Rockdale County, Georgia, to collect on the note which was in default. After Debtor filed Chapter 7, the Bank discontinued the lawsuit as to Debtor. On June 13, 2011, the Bank obtained a judgment for $875,059.87 against Bailey, Folsom and Baycom Extensions,[4] but not against Debtor.

The Bank foreclosed on the White County property in July or August 2011.[5] The Bank bid in the property for $787,273.61, leaving an $87,786.26[6] balance on the judgment. The Bank, through this adversary proceeding, seeks judgment against Debtor for this amount and a determination that the amount is nondischargeable.

During the trial of this adversary proceeding, it was disclosed that the Bank had not sought confirmation in state court of the foreclosure of the White County property. At the conclusion of the evidence, the Court asked counsel for the parties to file briefs on the effect, if any, that failure to obtain confirmation has on this adversary proceeding. Counsel for the parties subsequently

---

[3] The discharge would not relieve Debtor of debts that are determined to be nondischargeable in bankruptcy. 11 U.S.C. § 727(b).

[4] Although the record does not disclose Baycom Extensions' involvement in the loan transaction, Baycom Extensions and Bailey have the same address.

[5] At trial, the Bank's witness was not sure of the exact date. In their post-trial briefs, the parties refer to August 2, 2011, as the date of the foreclosure. The exact date of the foreclosure is not material to this decision.

[6] At trial, this amount was erroneously calculated to be $87,796.26.

4

filed, and the Court has considered, post-trial briefs on that and other issues presented in this adversary proceeding.

## CONCLUSIONS OF LAW

The Bank seeks a determination that its claim against Debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(B) which provides:

> A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> ...
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> ...
>
> > (B) use of a statement in writing–
> > (i) that is materially false;
> > (ii) respecting the debtor's or an insider's financial condition;
> > (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> > (iv) that the debtor caused to be made or published with intent to deceive;

The Bank has the burden of proof to establish all of the elements of its claim of nondischargeability. Agribank, FCB v. Gordon (In re Gordon), 277 B.R. 805, 809 (Bankr. M.D. Ga. 2001).

The Bank must first prove that Debtor owes a debt. "The term 'debt' means liability on a claim." 11 U.S.C. § 101(12). Under the Bankruptcy Code, "The term 'claim' means– (A) right to payment..." 11 U.S.C. § 101(5). "The validity of a creditor's claim is determined by rules of state law. Since 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code." Grogan v. Garner, 498 U.S. 279, 112

5

L. Ed.2d 755, 111 S.Ct. 654, 657-58 (1991).

Georgia Code § 44-14-161(a) provides:

> When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall <u>within 30 days after the sale</u>, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

(emphasis added).

It is undisputed that the Bank did not, within 30 days after the foreclosure, seek confirmation of the sale in state superior court. However, the Bank contends that the time in which it can seek confirmation was extended by 11 U.S.C. § 108(c), which provides:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of –
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

Thus, assuming this Code provision applies to postpetition events,[7] under section 108(c), the 30

---

[7] There is a split of authority as to whether section 108(c) applies to postpetition events. See In re Cowen, 207 B.R. 207, 210 (Bankr. E.D. Cal. 1997) (section 108(c) applies to postpetition events); contra In re Tyler, 166 B.R. 21, 26 (Bankr. W.D. N.Y. 1994) (section 108(c) does not apply to postpetition events). Resolution of this issue is not necessary for purposes of this decision.

6

day time period in O.C.G.A. § 44-14-161(a) would not expire until the later of the end of such period (30 days after the foreclosure sale) or 30 days after notice of the termination or expiration of the automatic stay.

The automatic stay, as it applies to the commencement of actions or proceedings against Debtor, terminated when the Court entered its order on February 17, 2011, granting Debtor a discharge in bankruptcy. 11 U.S.C. § 362(c)(2)(C). See 2 Collier on Bankruptcy ¶ 108.04 (16th ed. 2012) (termination of stay may occur due to granting of debtor's discharge). Notice of the Court's order of discharge was served on the Bank on February 19, 2011. Thus, when the Bank foreclosed the following July or August of 2011, there was no stay in place. Accordingly, 11 U.S.C. § 108(c)(1) controls and the tolling under section 108(c) ended when the time within which the confirmation had to be reported to the state superior court lapsed thirty days after the foreclosure. Depending on the exact date of the foreclosure, that date was either August, 2011, or September, 2011. Thus, the Bank's time to confirm the foreclosure sale to preserve its deficiency claim against Debtor has long since expired.

The Bank argues that failure to pursue confirmation does not affect the underlying debt, only the means a creditor may employ to collect it. The Bank relies upon Turpin v. North American Acceptance Corp., 119 Ga. App. 212, 166 S.E.2d 588, 592 (1969) where the court stated:

> It is true that North American could not sue on the deficiency and obtain a judgment unless the sale was confirmed by the Superior Court. Code Ann. § [44-14-161(a)]. It does not appear from this record whether a confirmation was obtained. But failure to do so does not invalidate the remaining obligation; it simply renders it impossible for the holder to sue on it, just as would a discharge in bankruptcy of the maker, properly pleaded. Powers v. Wren, 198 Ga. 316, 321, 31 S.E.2d 713.

However, in the case of In re Wiggins, 167 B.R. 990 (Bankr. M.D. Ga. 1993), aff'd, 167 B.R. 992 (M.D. Ga. 1994), this Court held that a bank which failed to confirm a foreclosure sale may not

assert a deficiency claim against the debtor in bankruptcy.  While the Bank may be able to pursue other collateral that secures its claim, see <u>Worth v. First National Bank of Alma</u>, 175 Ga. App. 297, 333 S.E. 2d 173 (1985) (failure to confirm foreclosure sale does not prohibit bank from enforcing its lien in a certificate of deposit also securing the debt), it cannot now sue Debtor to obtain a deficiency judgment.  Thus, the Bank has no enforceable claim against Debtor.

The Court, having determined that the Bank has no enforceable claim against Debtor, need not decide whether the Bank has established the remaining elements of section 523(a)(2)(B). Accordingly, the Court will enter an order dismissing the Bank's complaint with prejudice.

* END OF DOCUMENT *